The Honorable Bobby L. Glover State Senator Post Office Box 1 Carlisle, Arkansas 72024-0001
Dear Senator Glover:
I am writing in response to your request for my opinion on several questions concerning garbage collection in the City of Cabot. As background for your questions you state:
 After months of public meetings, review and debate, the Cabot City Council voted in favor of Ordinance No. 7 of 2009. (The ordinance accepted citywide garbage collection service, awarded an exclusive franchise, set collection rates and authorized the mayor and city clerk to enter into contracts with Waste Management of Arkansas, Inc.) The proposed contract for garbage collection states Waste Management of Arkansas, Inc., will begin serving the city on August 1, 2009.
 A question has arisen regarding local businesses bound by contract with other garbage companies. It has been alleged [that] a small local garbage company has personally visited each of their customers within the city limits and sent mailouts with their billing statements alleging any contract signed prior to August 1, 2009, which is the start date of the exclusive franchise contract, must be honored by the city. *Page 2 
I have paraphrased your specific questions as follows:
 1. Does Article I, § 10 of the United States Constitution, which protects against impairment of contracts, apply in this matter?
 2. Must the City of Cabot honor the existing private contracts between local businesses and their current providers for garbage collection service until those contracts expire regardless of the award of an exclusive franchise?
 3. If the city must honor existing private contracts for garbage collection service, it needs to be in a position to make the following statement:
 "All contracts executed prior to [DATE] will be honored . . ." and "All contracts executed on or after [DATE] will not be honored . . ." (and therefore such businesses will be required to utilize the services in accordance with the exclusive franchise ordinance).
 What date should appear in the blanks? The key dates are: November 8, 2008 (publication date). December 5, 2008 (proposal due). May 18, 2009 (ordinance passed), or August 1, 2009 (contract executed.)
 4. Should the proposed contract with Waste Management of Arkansas, Inc. be amended prior to its execution to reflect any date which may be referenced in response to Question 3?
RESPONSE
As I understand them, your questions ask me first to determine whether the ordinance approving the exclusive franchise agreement at issue impairs existing private contracts and then, assuming that the ordinance does impair said private contracts, to recommend the best course of action.[1] The test to determine if a *Page 3 
statute (or in this case an ordinance) violates the contracts clause is a factually intensive inquiry that requires construction of the contracts at issue. See, e.g., Equipment ManufacturersInstitute, et al., v. Janklow, et al., 300 F.3d. 842 (8th Cir. 2002). This office cannot serve as a finder of fact. Moreover, an opinion can construe neither contracts nor municipal ordinances. For these reasons, questions such as these, i.e., contract questions regarding municipalities, must necessarily be left to the city attorney or, in the event of litigation, the courts. See Op. Att'y Gen. 2006-062. Accordingly, I cannot definitively answer your questions. However, in an effort to assist you, I can and will set forth the principles of law that a court faced with this issue would apply.
Question 1: Does Article I, § 10 of theUnited States Constitution, which protects against impairment ofcontracts, apply in this matter?
Article 1, § 10 of the Constitution provides, in relevant part:
 No State shall . . . pass any . . . law impairing the Obligation of Contracts[.]
U.S. Const. Art. 1, § 10.[2]
While this language seems to suggest an absolute prohibition, the courts have repeatedly held that the contracts clause does not take complete precedence over the states' inherent police power to protect the general welfare of its citizens. See Ronald D. Wenkard, Unilateral Modification of Collective BargainingAgreements in Times of Fiscal Crisis and Bankruptcy: AnUnconstitutional Impairment of Contract?, 225 Ed. Law Rep. 1, 2, Dec. 27, 2007 (discussing the contracts clause generally at the outset).
The test to determine if a statute violates the contracts clause has three parts.
The first part of the test is a determination of whether the law in question has actually operated as a substantial impairment on pre-existing contractual *Page 4 
relationships. Equipment ManufacturersInstitute, et al. v. Janklow, et al., 300 F.3d. 842 (2002) citingEnergy Reserves Group, Inc. v. Kansas Power Light Co.,459 U.S. 400, 411, 103 S.Ct. 697, 704, 47 L.Ed. 2d 569 (1983);Educational Employees Credit Union, 50 F.3d at 1438.
To determine whether this first part of the test has been satisfied, a court will ask three questions: [1] is there an existing contractual relationship? [2] does the change in the law impair that relationship? and [3] is the impairment substantial? Id. at 855, citing General MotorsCorp. v. Romein,503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992).
Moreover, in order to determine whether the alleged impairment is substantial, a court will consider "the extent to which the [parties'] reasonable contract expectations have been disrupted."Id. citing In re: Workers Compensation Refund, 46 F.#D 813,819 (8th Cir. 1995). A court will also consider whether the industry the complaining party has entered has been regulated in the past." Id. citing Energy Reserves Group,459 U.S. at 411, 103 S.Ct. at 704.[3] The impairment does not need to be total in order to be "substantial", but the more severe the impairment, the closer scrutiny the law in question will receive.Id. citing Allied Structural Steel Co.,438 U.S. at 245, 98 S.Ct. at 2723, United States TrustCo. v. New Jersey,431 U.S. 1, 26-27, 97 S.Ct. 1505, 1515, 52 L.Ed.2d 92 (1977),Workers' Compensation Refund, 46 F.3d at 819.
If, after completing this inquiry, no substantial impairment of the contractual relationship has been found, then the law does not violate the Contracts Clause. If, however, the law constitutes a substantial impairment, the second part of the test should be applied.
The second part of the test involves a determination of whether the governmental entity in question has a "significant and legitimate public purpose behind the regulation." EducationalEmployees Credit Union, 50 F.3d at 1438, Energy *Page 5 Reserves Group, 459 U.S. at 412, 103 S.Ct. at 705 ("The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests."). A significant and legitimate public purpose exists when, for example, the law in question is passed to remedy a broad and general social or economic problem. Energy ReservesGroup, 459 U.S. at 413.
The U.S. Supreme Court has indicated that the public purpose need not be addressed to an emergency or a temporary situation.Id. It is important to note, however, that, in the majority of cases upholding legislation challenged as a violation of the Contracts Clause, the law upheld "did not prescribe a rule limitedin effect to contractual obligations or remedies but instead imposeda generally applicable rule of conduct designed to advance `a broadsocietal interest.'" McDonald's Corp. v. Nelson, el al.,822 F. Supp. 597, 609 (S.D. Iowa 1993) quoting ExxonCorp. v. Eagerton, 462 U.S. 176, 191 (1983) (emphasis added). In other words, laws that pass muster usually impose a general rule for the good of society and only incidentally impact existing contracts. Laws whose primary effect is contractual may be viewed more unfavorably.
If no significant and legitimate public purpose can be identified, the law in question is unconstitutional under the Contracts Clause.Janklow, 300 F.3d at 851. If, however, a significant and legitimate public purpose has been identified, the third part of the test is applied.
The third part of the test requires a court to determine "whether the adjustment of the `rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" Energy Reserves Group,459 U.S. at 412, 103 S.Ct. at 705 (quoting United States TrustCo. v. New Jersey,431 U.S. 1, 22, 97 S.Ct. 1505, 1518, 52 L.Ed. 2d 92 (1977)). "As is customary in reviewing economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." United States TrustCo., 431 U.S. at 22-23.
Question 2: Must the City of Cabot honor the existing privatecontracts between local businesses and their current providers forgarbage collection service until those contracts expire regardlessof the award of an exclusive franchise? *Page 6 
Assuming that a construction of the relevant contracts reveals that honoring the exclusive franchise agreement would necessarily involve dishonoring the existing private contracts, and further assuming that the application of the analysis set forth in response to your first question reveals that such action would constitute an unconstitutional impairment of contracts, continuing to honor these existing contracts might avoid such an impairment. However, it also appears that such action could well have an adverse impact on the city's contractual relationship with Waste Management. Accordingly, the city attorney's advice should be sought before the city decides on any particular course of action related to the contracts in question.
Question 3: If the city must honor existing private contractsfor garbage collection service, it needs to be in a position to makethe following statement:
 "All contracts executed prior to [ DATE ] will be honored. . ." and "All contracts executed on or after [ DATE] will not behonored . . ." (and therefore such businesses will be required toutilize the services in accordance with the exclusive franchiseordinance).
 What date should appear in the blanks? The key datesare: November 8, 2008 (publication date). December 5, 2008 (proposal due).May 18, 2009 (ordinance passed),or August 1, 2009 (contract executed.)
Again, this question involves factual determinations and requires construction of the relevant contracts and the relevant ordinance. As previously stated, this office cannot serve as a finder of fact and cannot construe either municipal ordinances or contracts. Accordingly, such questions must be left to the city attorney or, in the event of litigation, the courts. See Op. Att'y Gen. 2006-062.
Question 4: Should the proposed contract with Waste Managementof Arkansas, Inc. be amended prior to its execution to reflect anydate which may be referenced in response to Question 3?
Please see my response to question 3, above. *Page 7 
Assistant Attorney General Jennie Clingan prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General DM/JC:cyh
[1] Your original third question began "if the answer to question two is no" and then goes on to ask which contracts the city should honor. However question two essentially asks if the city is required to honor any contracts at all. Therefore, if the answer to question two is no, then question three is moot. For this reason, I have paraphrased question three to ask which contracts the city should honor if the answer to question two indicates that some contracts must be honored.
[2] "A municipal ordinance is a "law" within the meaning of Article 1, § 10 of the Constitution of the United States." 5 McQuillian Mun. Corp. § 19:66 (3rd ed.).
[3] The inquiry regarding previous regulation of the industry in question goes to the forseeability of the impairment. Even though an industry was previously regulated, a new regulation may not be foreseeable if it regulates a different aspect of the industry. For example, in Janklow, the Eighth Circuit held that the relationship between manufacturers and dealers of agricultural equipment was previously regulated because it was already a statutory misdemeanor for a manufacturer to coerce a dealer to take certain action. However, the court decided that a new statute which regulated the terms of dealership agreements between these parties was not foreseeable and constituted an impairment because it was sufficiently different from the previous regulation.Janklow, 300 F.3d at 858-59.